Well, what precisely was the mistake made by the district court in its interpretation? Well, there were a number of mistakes. I think, first of all, the court did ask for some of the things they wanted to offer, but they didn't. They misstated sections of the statute requiring the wrong mens rea for each part of the statute. For the scienter requirement that was applicable to all the provisions of 1202, the district court improperly found that the clause requiring reasonable grounds to know that the defendant's conduct will induce, enable, facilitate, or conceal an infringement could be met merely by the fact that Buzzfeed trains its reporters on the use of photographs and that the reporter at issue was a veteran or seasoned reporter. And the court assumed that this provision could apply to Buzzfeed's stipulated copyright infringement. Neither of these facts support a finding under 1202b. Second, for the additional scienter requirement contained in the distribution provision of 1202b-3, the district court improperly relied on a pretrial stipulation that to support a finding that Buzzfeed distributed the photograph at issue without Mango's permission. Isn't that really kind of beside the point, though? I mean, didn't you admit that in your answer? No, Your Honor. We did not. At most, the answer stated that the photograph was used. And the stipulation went slightly further to say that there was an agreement that copyright infringement could be found as a matter of liability. I don't have the page at hand, but in your answer, I think it's on, let's say, page 41. I thought you said that you admitted that it had been used without license. Correct, Your Honor. And that would, at most of the time be used without license. It's not permission. The license is permission. Certainly, yes, Your Honor. That could be go to the first scienter requirement, namely that the photograph was used without permission, without authority or by law. But that doesn't do anything with respect to the second scienter provision. No, no. Okay. Just pause for a minute there. What I thought I heard you saying is that the Court made a mistake relying on the stipulation to prove that it was used without permission. And my point is, you already admitted that. So how does that make a difference as to that particular element? Put aside your later arguments about different elements of Santorum. Right. It only goes to whether the photograph was used without a license. There could be some other authority or color of law for which the photograph could have been used. And certainly, the testimony at trial by the reporter was that he believed he had permission through a different vehicle, not the copyright owner. So the statute requires that there be permission either by the copyright owner or by virtue of other – some other mechanism. And unless you credit Hayes' testimony, which the judge didn't, what other authority is there in the record that he had? Since you admitted there was no license, the judge found that he was incredible. So what other evidence was there that, at least on that point that you're arguing, that there was permission? No, Your Honor. We're not arguing that there was permission to use the photograph. Okay. There was no permission to use the photograph from the copyright owner. And if one discredits the reporter as not having a colorable argument as to whether he had permission, that only goes to the first scienter requirement. What we can all agree on between the parties is that this is a dual scienter statute. Very high level of scienter must be proven. So even assuming, as Your Honor has, that the first section hasn't been met, the second scienter requirement, there was absolutely no finding that the – that the defendant had, in fact, done anything to stipulate that he had removed or altered the CMI, that he knew of the removal of the – of the alteration, or that it distributed knowing that the CMI had been removed or altered. It stipulated only to having used the photograph. In order to analyze the scienter requirements, we must look to the text of the statute itself. And one thing all involved in the can agree, again, is that these are dual scienter requirements. The common scienter requirement to all the subsections of 1202b is meant to limit liability to the instances where the removal would cause a harm beyond the mere act of the removal of the CMI. The district court's reading, with its heavy emphasis on acting without authority of the copyright owner, renders this provision superfluous. And all the fact findings of the Court went to the first scienter requirement. Appellate courts interpreting this section are few, but have found that the Ninth and the Fifth Circuits have held that this provision, the second scienter provision, is forward-looking, and that the party has to be aware or reasonable grounds to be aware of the probable future impact of its actions and requires affirmative evidence of mens rea beyond the mere removal of the CMI. Roberts. Did you argue that part in the district court? Yes, Your Honor. The future impact, that there had to be a showing of knowledge of future? Yes, Your Honor. That was the case. In fact, I can point to several parts in the record where trial counsels have been able to point to evidence in the record that BuzzFeed intentionally tampered with the photo credit, let alone did so to conceal or encourage downstream infringement. That downstream infringement is forward-looking, an argument that the forward-looking nature of the statute. In Stevens v. Korlogic, the Ninth Circuit said an affirmative showing must be made in order to meet this high level of mens rea. The Court there looked at a past pattern of conduct or modus operandi on the part of the defendant. None of that can be found here. Or evidence that the defendant knew that the copyright owner policed their IP through the particular CMI, also not present here. I'd like to bring the Court's attention to a very recent, fairly recent case that was brought to the Fifth Circuit, a case entitled Energy Intelligence Group, Inc. v. Cain Anderson Capital Advisors, 948 F. 3rd. 261. This case, coming out of the Southern District of Texas, found that the type of evidence at trial that demonstrated the second mens rea, the second scienter requirement, was of the kind of an e-mail where the defendant said, how do we hide, how do we, you know, hide the traces of this infringement. That's the kind of direct evidence that is there. Kagan. Kagan. Is it your position that the training and experience of an individual is simply irrelevant to the second scienter requirement? Correct, Your Honor. It should not be used as a reasonable grounds to know. It defies logic that generalized training could be used as evidence to support a finding of infringement here. If anything, we should be encouraging corporations to provide this type of training. If this training ---- But setting aside, I understand your argument that it would disincentivize training and that we should be concerned for that reason. But it's just a matter of relevance. Wouldn't you think training and experience would aid in reaching the conclusion that an individual would have known the likely effects of his or her actions? Your Honor, I see that my time is up. May I answer your question? Sure. Your Honor, if anything, in this case, it would show that the reporter had no record of having done anything like this before. So whether he was trained and made a misstep in trying to find the correct attribution here does not warrant liability where the mens rea can't be shown that he intended for there to be an infringement in the future. Thank you, Your Honor. Thank you, Your Honor. May it please the Court, James Freeman on behalf of the plaintiff, Gregory Emengo. He is in the courtroom today and he did come in and proudly showed me the New York Post of today's edition where his photograph is on the front cover with a gutter credit. And that sort of segues into the first point I have, which is that the purpose of this statute, according to the Senate Report 105-90 from May 11, 1998, Section 1202, quote, merely protects the integrity of CMI, end quote. The Senate report also goes on to say that CMI will assist in, quote, indicating attribution, creation, and ownership, end quote, that CMI that's at 1617 Westlaw. What we're saying here is that the interest that's being protected by the DMCA is both a private interest and a public interest. Number one, it's the private interest of the copyright holder to be attributed, to be credited for ownership and creation. And number two, it's also in the public interest because the public wants to know who is the creator of the photograph. If we go to a Steven Spielberg film, Steven Spielberg wants to be credited for directing the film and the public wants to know that Spielberg is also the director. If the operator of the movie theater removed Spielberg's credit from that movie and replaced it with John Smith, well, that in and of itself would be an injury and an interest that the DMCA is intended to protect. Now, I'd like to go on to the elements of the claim, 1202b-3. Opposing counsel stated that the district court misconstrued the application of the statute, but if we look at page 25 of their brief, which is document 51, they recite Judge Marrero's elements verbatim. So I don't think that they're taking any issue with the way that the elements have been framed. Rather, they're challenging how the facts were applied to the law. So let's go through these elements one by one. And the first two are pretty quick. Element number one is the existence of CMI. A gutter credit qualifies as CMI. That's not controversial. Focus on the second scienter element that you're asking. Yeah. Yeah, we could jump to that. Okay. So element number four. So the way that we view this case and the way that we present it to the district court, it's a lot like a shoplifting case involving what's called tag switching. It's when, like, a perpetrator would go into a Macy's, would remove the Macy's tag from the merchandise, and will replace it with a Neiman Marcus tag. And then they do so with the intent that if they leave the store and the security guard stops them, they could say, oh, this is from Neiman Marcus, it's not from Macy's, and they could leave the store and they could get waved through. That's very much what happened here. The Hays knew he didn't have authority from Mango. He knew that. He never contacted, he said on the record at trial, he never contacted Mango. And he knew or should have known that he did not have authority from Leon Fisher, whose unemployment lawyer who represents the individual depicted in the image.  So is it the second knowingly scienter requirement merges with the first or that it's, they can overlap or- No, this is the, here's the way, I think the best way of looking at it is that the third element, which is the first double scienter prong, is you have to show that the alteration was done with actual knowledge that they didn't have permission of the copyright owner. That's been established by the answer, and it's also been established at trial by the testimony of Gregory Bren, by the testimony of Mr. Mango, and also by the testimony of Hays himself, said he never contacted Mango, never contacted the New York Post. So we satisfied the first prong, I think, with flying colors. The fourth prong, or the second double scienter requirement, is the one that seems to be in most contention, is a constructive knowledge standard. And courts routinely impose constructive knowledge on, in the context of copyright law, on litigants. A good example would be Judge Batts' decision in Minden versus BuzzFeed, where that was a statute of limitations case where on a Rule 12 motion to dismiss, Judge Batts imposed constructive knowledge on the plaintiff saying you should have known that these infringements were taking place between 2011 and 2015, the case was filed 2018, because you'd been filing copyright infringement cases all along. You're sophisticated, you should know better, you should have been policing. And then Judge Batts also goes on to state in there, and this is 2014 WL3963124 Act 5, she then, I'm sorry, it's 390F sub 3rd461. Judge Batts also goes on to cite many cases stating that sophistication is often used as a factual predicate for imposing willfulness in copyright cases. So there's nothing new about using sophistication. But it's not just the sophistication that was used by Judge Marrero to impose this constructive knowledge. It was also all the other facts that he knew he didn't have the permission from Fisher, and that when he placed that false attribution, it was a false alibi. And this whole idea of owning the law. Your adversary's argument, as I understand it, that what you have to show with regard to the second element, reasonable grounds that it would induce, enable, facilitate, or conceal an infringement means a future infringement. And so your argument back is that, well, based on his experience and his training, he clearly knew that by altering the CMI, that would have the tendency to conceal his own conduct. Correct. And she cites the Stevens case as the authority for this proposition. Do you just can you help us understand Stevens? Yes. Okay. So the Stevens case, first of all, the Stevens case was not cited in the court below, and we've made that point. But putting that aside, the Stevens case involved invisible metadata, right, which then there's a presumption with invisible metadata that it could be removed inadvertently. Also, Stevens was a removal case. It wasn't an alteration case. It was not a concealment case. Anytime you have an act of concealment, it's implicit that there's going to be a future impact. Let's go back to the shoplifter. When you switch the tags on a piece of merchandise, you're doing so with the future intent that you're going to conceal the theft when you leave the building. That's the idea. So we've proven because it's a concealment case, Stevens can't really be applicable. Also in Stevens, it was an automated software technology that removed the metadata. It was not a human being who was thinking about deception and how he could, you know, cover up the fact that he was licensed. The other thing is, when they talk about concealment of an infringement in their brief, they say, well, how do we conceal the fact that the article was published? That's not what we're talking about. Infringement means copying without authorization. The copying is not being concealed. The fact that's being concealed is the lack of authorization. That's what he was concealing. So if we look at it that way, then the district court's finding that he concealed. It's not enable. It's not facilitate. I could see why, if you were to interpret the words enable or facilitate, that you would be thinking, oh, enabling it for a third party. But how do you conceal a third party's infringement? You can only conceal one's own infringement. And I think Stevens went too far in grafting language onto the statute that doesn't exist. If Congress had wanted the infringement to only be applicable to third parties, it could have just simply said infringement by third parties. That's not what the statute says. So one can conceal their own infringement, and we don't think that the Stevens case is applicable here. Now there's another argument they made in their brief. I'm surprised they didn't bring it up here because they've spent a lot of time on it, was this idea that there was an embedded link to the New York Post within the context of the article itself. So point number one, the New York Post is not CMI. The New York Post doesn't own the photograph. Gregory P. Mango owns the photograph. And if the intent was to credit Gregory Mango by linking back to the article, why didn't he just put Gregory Mango's name in the BuzzFeed article? So that doesn't make quite sense. The other thing is that the link was — it was a 13-paragraph article. The link was eight paragraphs in. It was far removed from CMI. So we have cited cases in our brief which say that the CMI has to be connected to the work itself. So a gutter credit or a watermark. A watermark means where the credit is included within the four corners of the photograph. That's not, you know, typically used in photojournalism, and photojournalism is typically a gutter credit. Can I just ask on the second — I guess this is the first scienter element. Is it your view that the Court made a clear factual finding that Hayes saw or was aware of the Mango gutter credit? There was a lot of testimony about this. I mean, he — Hayes testified first in the morning, and then after lunch, Judge Marrero actually called him back to the stand because he wanted to get to the bottom of that. So Hayes did testify initially that he didn't see it, but he was also testified over and over and over again that he was familiar with gutter credits, he used them, he was familiar with them. And then ultimately what happened was the clerk of court punched up the article online. It still existed. And the judge asked, well, Mr. Hayes, do you see the gutter credit? And from almost like five feet away, he said that he did. So I think ultimately — And then he says he finds it hard to credit that he couldn't see it. Yeah. I mean, I think ultimately it was a credibility assessment that it was just — it's just completely implausible that he didn't know. Plus, he was quoting from the New York Post article. He linked back to it. So he was intimately — he knew, and he downloaded the photograph. So considering that he read the New York Post article, he cited to it, he downloaded the photograph, the idea that he wouldn't have seen the gutter credit just was not plausible, and Judge Morrell discounted that testimony. Thank you. Thank you. Thank you, Your Honors. Just very briefly, I want to point back to the plain language of the statute. The section regarding the second CENTER requirement says, knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal infringement of any right. The word will is the only forward, future tense use of that word in the entirety of the statute, entirety of this chapter. Everything else is in the past tense or the present tense. So one must give meaning to that — that word will. And, in fact, that's exactly what's — What does that mean, shall and will? It says, no person shall remove, knowing that it will conceal. Are you saying that shall is present tense and will is future tense? Correct. And that's what the Stevens court found. They found that that phrase is consistent with the legislative history of the statute, which required that there be something more to limit liability in that regard. In Stevens, was there a present infringement? Yes. There was? Yes, I believe so. What's wrong? I thought they were uploaded with permission of the copyright holders to the database by the real estate agents. They were uploaded. Correct. There was no permission to then use the software on the photographs. And by virtue of the software, they had to duplicate the photographs within the software and then removed the CMI. So, right. I thought that was the problem, was the removal of the CMI, not a copyright infringement. I thought that they were reproduced with permission. They were reproduced. They were uploaded with permission. Right. So there was no copyright infringement. Correct. There was no copyright infringement. Right. So it wasn't really before the court in Stevens, correct, about whether or not there was any present infringement that was being concealed, correct? But there was a need to interpret the same very statutory language. And in that case, the court said that that is a forward-looking provision. It mattered not that it was to conceal, induce, or enable, or resuscitate. It was still an interpretation of that same provision, Your Honors. Thank you very much. Thank you both. And we will take it under advisement.